**ORAL ARGUMENT SCHEDULED MAY 5, 2022**

No. 20-1343 (LEAD)
Consolidated with 20-1361, 20-1362, 20-1365, 20-1368, 21-1067, 21-1070
———————————————————————————

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**
————————————

CONSTELLATION MYSTIC POWER, LLC,
*Petitioner,*

v.

FEDERAL ENERGY REGULATORY COMMISSION,
*Respondent*.
————————————
BRAINTREE ELECTRIC LIGHT DEPARTMENT, ET AL.,
*Intervenors.*

ON PETITIONS FOR REVIEW OF ORDERS OF THE
FEDERAL ENERGY REGULATORY COMMISSION
———————————————————————————

**BRIEF OF INTERVENORS BRAINTREE ELECTRIC LIGHT
DEPARTMENT, ET AL., MASSACHUSETTS MUNICIPAL WHOLESALE
ELECTRIC COMPANY, AND NEW HAMPSHIRE ELECTRIC
COOPERATIVE, INC. IN SUPPORT OF STATE PETITIONERS**

Scott H. Strauss
Jeffrey A. Schwarz
Amber L. Martin Stone
SPIEGEL & MCDIARMID LLP
1875 Eye Street, NW, Suite 700
Washington, DC 20006
Telephone:  (202) 879-4000

*Counsel for Intervenors
Massachusetts Municipal Wholesale
Electric Company and New
Hampshire Electric Cooperative, Inc.*

John P. Coyle
DUNCAN & ALLEN LLP
1730 Rhode Island Avenue, NW
Suite 700
Washington, DC 20036
Telephone:  (202) 289-8400

*Counsel for Intervenors Braintree
Electric Light Department, et al.*

Dated:  February 24, 2022

## CERTIFICATE AS TO PARTIES, RULINGS
## UNDER REVIEW, AND RELATED CASES

**A.  Parties and Amici**

**1.  Parties before the Court**

The parties and amici to the proceedings before this Court are correctly identified in the Certificate preceding the Initial Brief of the State Petitioners, filed September 7, 2021.

**2.  Parties before the Commission**

The proceedings before the Federal Energy Regulatory Committee (FERC) that give rise to these petitions for review were conducted in its Docket Nos. ER18-1639-000 *et seq*., and were initiated by Petitioner Constellation Mystic Power, LLC under Section 205 of the Federal Power Act (16 U.S.C. § 824d). The parties who intervened in the proceedings before the FERC are correctly identified in the Certificate preceding the Initial Brief of Petitioner Constellation Mystic Power, LLC.

**B. Rulings Under Review**

References to the rulings for which the Petitioners seek review are set forth in the Initial Brief of State Petitioners, filed September 7, 2021.

**C. Related Cases**

Intervenors are not aware of any related cases other than those consolidated with the petition in this case by the Court's Order of February 24, 2021.  FERC

conducted a discrete paper hearing to determine the just and reasonable return on common equity under the Agreement (*Constellation Mystic Power, LLC*, 176 FERC ¶ 61,019) (2021).  On September 13, 2021, FERC issued a Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration in that subdocket (*Constellation Mystic Power, LLC*, 176 FERC ¶ 62,267 (2021)).

Respectfully submitted,

| | |
|---|---|
| */s/ Scott H. Strauss* | */s/ John P. Coyle* |
| Scott H. Strauss | John P. Coyle (Cir. Bar No. 32182) |
| Jeffrey A. Schwarz | DUNCAN & ALLEN LLP |
| Amber L. Martin Stone | 1730 Rhode Island Avenue NW, Suite 700 |
| SPIEGEL & MCDIARMID LLP | Washington, DC 20036 |
| 1875 Eye Street, NW, Suite 700 | (202) 289-8400 |
| Washington, DC 20006 | jpc@duncanallen.com |
| Telephone:  (202) 879-4000 | |
| scott.strauss@spiegelmcd.com | *Counsel for Braintree Electric Light* |
| jeffrey.schwarz@spiegelmcd.com | *Department, Concord Municipal Light Plant,* |
| amber.martin@spiegelmcd.com | *Georgetown Municipal Light Department,* |
| | *Hingham Municipal Lighting Plant, Littleton* |
| *Counsel for Massachusetts* | *Electric Light & Water Department,* |
| *Municipal Wholesale Electric* | *Middleborough Gas and Electric* |
| *Company and New Hampshire* | *Department, Middleton Electric Light* |
| *Electric Cooperative, Inc.* | *Department, Norwood Municipal Light* |
| | *Department, Pascoag Utility District,* |
| | *Reading Municipal Light Department,* |
| | *Taunton Municipal Lighting Plant and* |
| | *Wellesley Municipal Light Plant, (Eastern* |
| | *New England Consumer-Owned Systems)* |

Dated: February 24, 2022

iii

## RULE 26.1 CORPORATE DISCLOSURE
## STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1, Intervenors state as follows:

**Eastern New England Consumer-Owned Systems:** Braintree Electric Light Department, Concord Municipal Light Plant, Georgetown Municipal Light Department, Hingham Municipal Lighting Plant, Littleton Electric Light & Water Department, Middleborough Gas and Electric Department, Middleton Electric Light Department, Norwood Municipal Light Department, Pascoag Utility District, Reading Municipal Light Department, Taunton Municipal Lighting Plant and Wellesley Municipal Light Plant (collectively the Eastern New England Consumer-Owned Systems) state that each of them is a municipally-owned electric utility organized and existing under the laws of the Commonwealth of Massachusetts, or (in the case of the Pascoag Utility District) a quasi-municipal district organized and existing under the laws of Rhode Island.  None of them has a corporate parent.  None of them issue stock, and therefore no public company holds ten percent or more of the stock of any of them.

**Massachusetts Municipal Wholesale Electric Company:**  Massachusetts Municipal Wholesale Electric Company is a public instrumentality of the Commonwealth of Massachusetts created for the purpose of financing the purchase of electric power by utilities within and outside of Massachusetts.

*See* Mass Stats. 1975, c. 775 as amended.  Its membership is made up of cities and towns in Massachusetts having municipal electric departments.  It has no corporate parent and no public company holds ten percent or more of its stock.

**New Hampshire Electric Cooperative, Inc.:**  New Hampshire Electric Cooperative, Inc. is a non-profit, member-owned distribution cooperative incorporated in New Hampshire and engaged in retail power sales and broadband services to members in New Hampshire. It has no parent companies. No publicly-held company has a 10% or greater ownership interest in it, and it has no subsidiary company or affiliate that has issued shares or debt securities to the public.  Rather, it is owned by large numbers of individual and corporate end-use retail members located in the areas it serves.  None of these members has an individual ownership interest greater than 10%.

Respectfully submitted,

/s/ Scott H. Strauss                          /s/ John P. Coyle

Scott H. Strauss                              John P. Coyle (Cir. Bar No. 32182)
Jeffrey A. Schwarz                            DUNCAN & ALLEN LLP
Amber L. Martin Stone                         1730 Rhode Island Avenue NW, Suite 700
SPIEGEL & MCDIARMID LLP                        Washington, DC  20036
1875 Eye Street, NW, Suite 700                (202) 289-8400
Washington, DC 20006                          jpc@duncanallen.com
Telephone:  (202) 879-4000
scott.strauss@spiegelmcd.com                  *Counsel for Eastern New England*
jeffrey.schwarz@spiegelmcd.com                *Consumer-Owned Systems*
amber.martin@spiegelmcd.com

*Counsel for Massachusetts*
*Municipal Wholesale Electric*
*Company and New Hampshire*
*Electric Cooperative, Inc.*


Dated: February 24, 2022

# TABLE OF CONTENTS

<u>Page</u>

CERTIFICATE AS TO PARTIES, RULINGS UNDER REVIEW, AND
RELATED CASES ...................................................................... ii

RULE 26.1 CORPORATE DISCLOSURE STATEMENT ................................... iv

TABLE OF AUTHORITIES ............................................................... viii

GLOSSARY ...................................................................................x

STATEMENT OF ISSUES .......................................................................1

STATUTORY AND REGULATORY PROVISIONS ...........................................2

STATEMENT OF THE CASE ....................................................................2

SUMMARY OF ARGUMENT ...................................................................2

STANDARD OF REVIEW ........................................................................6

ARGUMENT .........................................................................................6

    I.  FERC's Allocation of Everett Costs to Mystic Lacks Substantial
        Evidentiary Support and Does Not Constitute Reasoned Decision
        Making. .........................................................................7

        A. FERC's 91 Percent Allocation Is Contrary to the Record. .................7

    II.  FERC's Elimination of the Everett Revenue Credit Is Unreasonable. ...12

    III.FERC's Refusal to Apply a "Clawback" to Everett Is Unreasonable. ....14

CONCLUSION .......................................................................................17

# TABLE OF AUTHORITIES

Page

## FEDERAL COURT CASES

*Allentown Mack Sale & Servs., Inc. v. NLRB*, 522 U.S. 359 (1998) ......................19

*\*Cities of Bethany v. FERC*, 727 F.2d 1131 (D.C. Cir. 1984) ...........................9, 17

*\*Consol. Gas Supply Corp. v. FPC*, 520 F.2d 1176 (D.C. Cir. 1975) ...............9, 17

*Delaware Div. of Pub. Advoc. v. FERC*, 3 F.4th 461 (D.C. Cir. 2021)...................16

*FERC v. Elec. Power Supply Ass'n*, 136 S. Ct. 760 (2016)....................................15

*FPC v. Conway Corp.*, 426 U.S. 271 (1976) ...........................................................15

*Gulf S. Pipeline Co. v. FERC*, 955 F.3d 1001 (D.C. Cir. 2020)..............................11

*Illinois Com. Comm'n v. FERC*, 576 F.3d 470 (7th Cir. 2009) ................................9

*Midwest Gas Users Ass'n v. FERC*, 833 F.2d 341 (D.C. Cir. 1987)......................15

*NAACP v. FPC*, 520 F.2d 432 (D.C. Cir. 1975) *aff'd*, 425 U.S. 662 (1976) ..........15

*\*Old Dominion Elec. Coop. v. FERC*, 898 F.3d 1254 (D.C. Cir. 2018), *reh'g denied*, 905 F.3d 671 (D.C. Cir. 2018) ......................................................11, 16

*Pac. Gas & Elec. Co. v. FERC*, 373 F.3d 1315 (D.C. Cir. 2004) ..........................15

*Pennsylvania Water & Power Co. v. FPC*, 343 U.S. 414 (1952)...........................15

*\*PPL Wallingford Energy LLC v. FERC*, 419 F.3d 1194 (D.C. Cir. 2005)............23

*\*PSEG Energy Res. & Trade LLC v. FERC*, 665 F.3d 203 (D.C. Cir. 2011).....8, 23

*Xcel Energy Servs., Inc. v. FERC*, 815 F.3d 947 (D.C. Cir. 2016) .........................15

**FEDERAL AGENCY CASES**

*Midwest Indep. Sys. Operator, Inc.*, Opinion No. 556, 161 FERC ¶ 61,059
(2017) ...................................................................................10, 20, 22

*New York Indep. Sys. Operator, Inc.*, 155 FERC ¶ 61,076 (2016), *on reh'g*,
161 FERC ¶ 61,189 (2017), *on reh'g*, 163 FERC ¶ 61,047 (2018) ............20, 22

*Portland Gen. Exch., Inc.*, 51 FERC ¶ 61,108 (1990)............................................15

# GLOSSARY

| | |
|---|---|
| Agreement | The Cost of Service Agreement among Constellation Mystic Power, LLC, Exelon Generation Company, LLC, and ISO New England Inc., as amended from time to time. |
| Commission or FERC | Federal Energy Regulatory Commission |
| Connecticut Parties | Petitioners Connecticut Public Utilities Regulatory Authority, Connecticut Department of Energy and Environmental Protection, and Connecticut Office of Consumer Counsel, collectively |
| Consumer-Owned Utility Ratepayers | Braintree Electric Light Department, Concord Municipal Light Plant, Georgetown Municipal Light Department, Hingham Municipal Lighting Plant, Littleton Electric Light & Water Department, Middleborough Gas and Electric Department, Middleton Electric Light Department, Norwood Municipal Light Department, Pascoag Utility District, Reading Municipal Light Department, Taunton Municipal Lighting Plant and Wellesley Municipal Light Plant, Massachusetts Municipal Wholesale Electric Company, and New Hampshire Electric Cooperative, Inc. |
| December 2018 Order | *Constellation Mystic Power, LLC*, Order Accepting Agreement, Subject to Condition and Directing Briefs, 165 FERC ¶ 61,267 (Dec. 20, 2018), R.313, JA1260. |
| December 2020 Order | *Constellation Mystic Power, LLC*, Order Addressing Arguments Raised on Rehearing, and Setting Aside Prior Order, in Part, 173 FERC ¶ 61,261 (Dec. 21, 2020), R.420, JA1917. |
| Eastern New England Consumer-Owned Systems | Intervenors Braintree Electric Light Department, Concord Municipal Light Plant, Georgetown Municipal Light Department, Hingham Municipal Lighting Plant, Littleton Electric Light & Water Department, Middleborough Gas and Electric Department, |

| | |
|---|---|
| | Middleton Electric Light Department, Norwood Municipal Light Department, Pascoag Utility District, Reading Municipal Light Department, Taunton Municipal Lighting Plant and Wellesley Municipal Light Plant |
| Everett | Everett Marine Terminal, the liquefied natural gas facility in Everett, Massachusetts owned by Exelon and used to serve the Mystic Units |
| Exelon | Exelon Generation Company, LLC, the corporate parent of Mystic |
| FPA | Federal Power Act |
| Fuel Supply Agreement | The Fuel Supply Agreement between Mystic's affiliate, Constellation LNG, LLC, and Mystic under which Everett will be used to supply the fuel requirements of the Mystic Units. |
| ISO-NE | ISO New England, Inc., the New England Regional Transmission Organization. |
| July 2018 Order | *Constellation Mystic Power, LLC*, Order Accepting and Suspending Filing and Establishing Hearing Procedures, 164 FERC ¶ 61,022 (July 13, 2018), R.75, JA566. |
| July 2020 Rehearing Order I | *Constellation Mystic Power, LLC*, Order Granting Clarification in Part, Denying Clarification in Part, and Addressing Arguments Raised on Rehearing, 172 FERC ¶ 61,043 (July 17, 2020), R.374, JA1516. |
| July 2020 Compliance Order | *Constellation Mystic Power, LLC*, Order on Compliance and Directing Further Compliance, 172 FERC ¶ 61,045 (July 17, 2020), R.376, JA1626. |
| July 2020 Rehearing Order II | *Constellation Mystic Power, LLC*, Order on Clarification, Directing Compliance, and Addressing Arguments Raised on Rehearing, 172 FERC ¶ 61,044 (July 17, 2020), R.375, JA1549. |

| Massachusetts AG | Petitioner Massachusetts Attorney General |
|---|---|
| MMcf/d | Million cubic feet per day, a unit of measurement of the amount of natural gas flowed or consumed per day. |
| Mystic | Constellation Mystic Power, LLC, owner of the Mystic Units |
| Mystic Units | Mystic Units 8 and 9 gas-fired power plants located adjacent to Everett and owned by Mystic |
| States Committee | Petitioner the New England States Committee on Electricity, Inc. |
| State Petitioners | Collectively, Massachusetts AG, Connecticut Parties, and the States Committee |

Pursuant to the Court's March 26 and June 23, 2021 Orders, intervenors Braintree Electric Light Department, Concord Municipal Light Plant, Georgetown Municipal Light Department, Hingham Municipal Lighting Plant, Littleton Electric Light & Water Department, Middleborough Gas and Electric Department, Middleton Electric Light Department, Norwood Municipal Light Department, Pascoag Utility District, Reading Municipal Light Department, Taunton Municipal Lighting Plant and Wellesley Municipal Light Plant, Massachusetts Municipal Wholesale Electric Company, and New Hampshire Electric Cooperative, Inc. (collectively, Consumer-Owned Utility Ratepayers) submit their brief in support of Massachusetts Attorney General; Connecticut Public Utilities Regulatory Authority, Connecticut Department of Energy and Environmental Protection, and Connecticut Office of Consumer Counsel (together, Connecticut Parties); and the States Committee (collectively, State Petitioners).

## STATEMENT OF ISSUES

Consumer-Owned Utility Ratepayers adopt the "Statement of Issues" in the Initial Brief of the State Petitioners. We will focus in this brief on their issues numbered 1, 3 and 4. Those issues challenge the Commission's decisions to: (1) require that customers fund 91% of the costs to Exelon Generation Company, LLC (Exelon, corporate parent of Everett) and its affiliates of owning and operating the Everett Marine Terminal, instead of allocating those costs based on Mystic's use of

Everett; (2) eliminate the obligation on the part of Mystic to credit against Agreement charges revenues from sales of vaporized liquefied natural gas to parties other than Mystic; and (3) fail to require Mystic to refund to customers costs of capital expenditures and repairs for Everett in the event that Mystic re-enters ISO New England, Inc.'s (ISO-NE) markets following the Agreement's expiration.

## STATUTORY AND REGULATORY PROVISIONS

The pertinent statutory and regulatory provisions are set forth in the addendum accompanying the State Petitioners' Initial Brief filed September 7, 2021.

## STATEMENT OF THE CASE

Consumer-Owned Utility Ratepayers adopt the Statement of the Case in the State Petitioners' Initial Brief, filed September 7, 2021.

## SUMMARY OF ARGUMENT

The FERC orders under review suffer from a series of compounding errors. *First,* the Commission erred in allocating 91% of the costs of Mystic's affiliated fuel supplier, Everett Marine Terminal (Everett), to Mystic and, consequently, to ISO New England's captive electric ratepayers who must pay the charges under the Agreement.

The basis for the Commission's allocation is that 91% of Everett sales historically have been vapor gas, while the remaining 9% have been liquid sales. R.313 [December 2018 Order P 133], JA1322. FERC was correct in concluding that the nine percent of costs attributed to liquid sales "clearly does not benefit Mystic 8

2

and 9." *Id.* But the Commission's selection of 91% fails to respond meaningfully to record evidence demonstrating the limits of Mystic's use and functionality of the Everett facility. Of Everett's four vaporization systems operating at various pressures, only Everett's High Pressure and High Pressure Expansion vaporization systems operate at pressures that can be used by the Mystic Units 8 and 9 gas-fired power plants located adjacent to Everett and owned by Mystic (Mystic Units), and only a fraction of the capability of those systems is used to serve Mystic. R.139 [Ex. S-0001 (McComb) at 10:3-11:6], JA639-40; R.139 [S-0003 at 3], JA643; R. 276 [CT Parties Initial Br. at 17-18 and evidence therein cited], JA1252-53. At most, Mystic can use roughly 39% of Everett's gas vapor supply capacity. R.139 [Ex. S-0001 (McComb) at 8:5-7, 9:6-8], JA637, 638. FERC's allocation finding ignores these engineering facts, burdens Agreement ratepayers with far more than their fair share of Everett costs, and is neither supported by substantial evidence nor the product of reasoned decision making. *PSEG Energy Res. & Trade LLC v. FERC*, 665 F.3d 203, 208 (D.C. Cir. 2011) ("[a]n agency's 'failure to respond meaningfully' to objections raised by a party renders its decision arbitrary and capricious" (quoting *Canadian Ass'n of Petroleum Producers v. FERC*, 254 F.3d 289, 299 (D.C. Cir. 2001)).

FERC's brief response, in its rehearing order, not only failed to engage with this evidence; it also contradicted decades of Commission precedent. FERC rejected

allocating costs based on Mystic's maximum use of Everett's vaporization capacity on grounds that "fixed operating cost expenditures do not vary with demand." R.375 [July 2020 Rehearing Order II P 65], JA1581. Yet FERC for decades has accepted rates that allocate fixed costs based on peak demand use, because peak use contributes to the incurrence of fixed costs and correlates with the benefits derived from them. *E.g.*, *Cities of Bethany*, *Ill. v. FERC*, 727 F.2d 1131 (D.C. Cir. 1984); *Consol. Gas Supply Corp. v. FPC*, 520 F.2d 1176, 1180-81 (D.C. Cir. 1975).

*Second*, the FERC eliminated any argument that its Everett allocation nonetheless achieved some sort of "roughly commensurate" outcome (*Illinois Commerce Commission v. FERC*, 576 F.3d 470, 477 (7th Cir. 2009)) when the Commission jettisoned crediting revenues from third-party sales of vaporized gas against Agreement charges. R.375 [July 2020 Rehearing Order II PP 64-66], JA1580-81. The Commission's decision to eliminate revenue crediting while continuing to allocate 91% of Everett's costs to Agreement ratepayers results in a windfall to Everett (and Exelon, as the corporate parent of Everett) by allowing it to pocket more than its cost of service or enabling it to undercut its competition by subsidizing Everett's third-party customers (the local distribution company and two interstate pipelines), undercutting Everett's competition.

*Third*, FERC generally requires retained resources—those that threatened to exit the market and retire absent a cost-of-service agreement—must refund to

customers certain costs collected through the agreement if those resources return to the market rather than retiring at the agreement's end. The idea behind this "clawback" requirement is to deter such facilities from "toggling" between the higher of cost-based or market-based compensation and to ensure that, in re-entering market-based compensation, those resources gain no unfair advantage over their competitors as a result of their having received mandated cost support.  R.313 [December 2018 Order PP 208-12], JA1353-55; *Midwest Ind. Sys. Operator, Inc.*, Op. No. 556, 161 FERC ¶ 61,059, PP 51-60 (2017) (Op. No. 556).  While FERC required Mystic to incorporate a clawback provision in the Agreement, R.313 [December 2018 Order PP 208-12], JA1353-55), the Commission subsequently refused to apply that clawback to Everett costs. R.375 [July 2020 Rehearing Order II P 43], JA1534-35.  FERC asserted that "even though Mystic included the Everett Agreement as an attachment to the Mystic Agreement transmittal, the Everett Agreement is not on file with the Commission and is not a jurisdictional rate because Everett is not a jurisdictional entity," and found that it "lacks jurisdiction to require a clawback, true-up, and/or refund of Everett's costs" (*id*).  FERC's inconsistent jurisdictional assertions on Everett costs—essentially that it has authority to impose those costs, but lacks jurisdiction to ensure that they are not unjust, unreasonable, or unduly discriminatory—deprives its Orders of any claim to reasoned decision making.

Given these deficiencies in FERC's Orders, the Court should grant State Petitioners' petitions for review and vacate the portions of the Orders challenged by State Petitioners.

## STANDARD OF REVIEW

Consumer-Owned Utility Ratepayers adopt the standard of review set out in State Petitioners Initial Brief.

## ARGUMENT

The fundamental principle of cost causation holds that rates should reflect "the burdens imposed or the benefits drawn by" the customer. *Gulf S. Pipeline Co., LP v. FERC*, 955 F.3d 1001, 1013 (D.C. Cir. 2020) (finding "FERC set rates that would require shippers to pay amounts vastly disproportionate to the value of the benefits they draw, and FERC failed to show why such rates were reasonable."); *Old Dominion Elec. Coop. v. FERC*, 898 F.3d 1254, 1260-61 (D.C. Cir. 2018), *reh'g denied*, 905 F.3d 671 (D.C. Cir. 2018). On the one hand, FERC's allocation of Everett costs rests on the premise that it can pass those costs through Federal Power Act, 16 U.S.C. §§ 791-825r (FPA)-regulated wholesale electric rates even though the Natural Gas Policy Act, Pub. L. No. 95-621, 92 Stat. 3350, and the Natural Gas Act, Pub. L. No. 75–688, 52 Stat. 821, deny the Commission jurisdiction over Everett. R.313 [December 2018 Order, Glick, Comm'r, dissenting, n. 14 and associated text], JA1367. On the other hand, FERC later concluded that its lack of

6

jurisdiction over Everett precluded it from allocating Everett's costs according to fundamental propositions of justness and reasonableness. These include both crediting revenues against fixed costs—"If costs are included but related revenue credits are excluded, then the resulting rate results in double-recovery." R.313 [December 2018 Order P 135, n.303], JA1323-24—and the deployment of "clawback" provisions in cost-of-service agreements to prevent unjust enrichment and unfair competition.

## I.   FERC's Allocation of Everett Costs to Mystic Lacks Substantial Evidentiary Support and Does Not Constitute Reasoned Decision Making.

The Commission's decision to allocate 91% of Everett's costs to the Agreement is not justified by either precedent or the record below.

### A.   FERC's 91 Percent Allocation Is Contrary to the Record.

FERC's December 2018 Order allocated 91% of Exelon's costs of owning and operating Everett to ISO-NE customers under the Agreement. R.313 [December 2018 Order P 133], JA1322-23. FERC's allocation deducts from Everett's total costs the nine percent of those costs that are "associated with liquid natural gas sales via Everett's liquefied gas truck refueling station, and since Mystic 8 and 9 can only accept vapor gas, that nine percent of costs clearly does not benefit Mystic 8 and 9." *Id.* FERC's allocation of the remaining 91% of Everett costs to ISO-NE customers

under the Agreement ignores that a substantial portion of those costs, like the truck sales of liquefied gas, likewise do not benefit the Mystic Units.

As FERC's witness explained in her pre-filed testimony, Everett has four vaporization systems operating at various pressures, only some of which can be used to serve the Mystic Units. R.139 [Ex. S-0001 (McComb) at 10:3-11:6], JA639-40; R.139 [Ex. S-0003 at 3], JA643. The FERC-certificated vaporization capability of Everett is 715,000 million cubic feet per day (MMcf/d), while the Mystic Units' maximum demand is 250,000 MMcf/d. R.139 [Ex. S-0001 (McComb) at 8:5-7], JA637. The remaining vaporization capacity is used to supply vapor at various pressures to (i) a local gas distributor (Boston Gas) and (ii) two interstate gas pipelines, in addition to the Mystic Units. R.139 [Ex. S-0001 (McComb) at 9:12-10:2], JA638-39; R.139 [Ex. S-0004], JA644-46. The costs that FERC allocated to ISO-NE customers under the Agreement include contract charges for firm interstate pipeline capacity through which Exelon exports vaporized gas from Everett to third parties.  As State Petitioners observe (State Petitioners Initial Brief at 23), that interstate pipeline capacity is inaccessible to the Mystic Units. R.2 [Ex. MYS-0004 at 3], JA229. The plain terms of the Fuel Supply Agreement between Mystic and Everett underscore that Mystic is on the hook for costs unrelated to serving Mystic:

> Each Month Buyer shall reimburse and pay to Seller the demand and commodity charges associated with any pipeline transportation agreements held by Seller or [Distrigas of Massachusetts LLC (former owner of Everett),] pursuant to which

8

> Seller or [Distrigas of Massachusetts LLC] transports and sells
> Gas from the [Everett] Terminal to Third-Party Customers.

R.253 [Ex. MYS-0016 at 3], JA1040. This provision obligates Mystic to pay Everett charges incurred in connection with Everett's sales of gas to third parties. In conjunction with the Agreement cost structure adopted by the Commission, the provision effectively requires New England's wholesale electric ratepayers to pay costs unrelated to Mystic's use of Everett and to subsidize its merchant gas sales.

It is no surprise that Mystic and its affiliated fuel supplier sought to obtain from Mystic's captive electricity ratepayers a cost-recovery guarantee and cross-subsidy otherwise unavailable to the fuel supplier. Nor is it surprising that ISO-NE—which claimed to need Mystic for fuel security and lacked equal bargaining power—agreed to the arrangement. But the FPA requires more of FERC. The statute aims to protect consumers against excessive prices. *FERC v. Elec. Power Supply Ass'n*, 136 S. Ct. 760, 781 (2016).[1] Doing so requires FERC to examine closely any self-dealing arrangements that may foist excessive costs on third parties. *See Midwest Gas Users*

---

[1] *Pa. Water & Power Co. v. FPC*, 343 U.S. 414, 418 (1952) ("A major purpose of the whole [Federal Power] Act is to protect power consumers against excessive prices."); *Xcel Energy Servs., Inc. v. FERC*, 815 F.3d 947, 952 (D.C. Cir. 2016) (*quoting Mun. Lt. Bds. v. FPC*, 450 F.2d 1341, 1348 (D.C. Cir. 1971)) (the Federal Power Act's "primary aim is the protection of consumers from excessive rates and charges"); *NAACP v. FPC*, 520 F.2d 432, 438 (D.C. Cir. 1975) ("Of the Commission's primary task there is no doubt, however, and that is to guard the consumer from exploitation by non-competitive electric power companies."), *aff'd*, 425 U.S. 662 (1976).

*Ass'n v. FERC*, 833 F.2d 341, 353-55 (D.C. Cir. 1987); *Portland Gen. Exch.*, *Inc*., 51 FERC ¶ 61,108, at 61,243-44 (1990). And that is doubly necessary where the costs at issue may include costs of non-jurisdictional activities not directly related to the jurisdictional service. *See FPC v. Conway Corp.*, 426 U.S. 271, 280-82 & nn.7-8 (1976).

Put simply, there is no correlation between the majority of Everett costs allocated to Mystic and the actual demand that the Mystic Units (and the customers who ultimately foot the bill under the Agreement) place on the Everett facilities. "[O]ther than the fact that [vapor sales] are a mathematically simple way to allocate cost, we can find no reason why they serve as an appropriate or reasonable basis for doing so." *Pac. Gas & Elec. Co. v. FERC*, 373 F.3d 1315, 1321 (D.C. Cir. 2004). FERC's allocation of 91% of Exelon's costs of owning and operating Everett to ISO-NE customers under the Agreement "runs counter to the evidence before the agency," *Del. Div. of Pub. Advocate v. FERC*, 3 F.4th 461, 469 (D.C. Cir. 2021), and its decision on this point lacks support in both substantial evidence and reasoned decision making.

The 91% of Everett facility costs allocated to the Agreement awards a windfall to Everett—and, by extension, Exelon, its parent and the owner of Mystic. FERC's cost allocation decision ensures that Everett will recoup all of its costs associated with vaporized gas sales through the Agreement while simultaneously retaining all

third-party sales revenues. But, as explained above, Mystic utilizes only 250,000 MMBtu/d, while the remaining Everett vaporization capacity serves third-party customers. R.139 [Ex. S-0001 (McComb) at 8:5-7], JA637. The Commission may not allocate substantially all of a facility's costs to one customer when that facility benefits many customers. FERC's decision to do so is a simple and straightforward breach of basic cost allocation principles. *Old Dominion Elec. Coop. v. FERC*, 898 F.3d 1254, 1260 (finding FERC's orders arbitrary and capricious where FERC approved a cost allocation approach singling out a subset of customers where the record reflected that the high-voltage power lines at issue produced significant regional benefits), *reh'g denied*, 905 F.3d 671 (D.C. Cir. 2018).

FERC's meager effort on rehearing to justify this result not only failed to engage with the protestors' evidence and arguments; it also flew in the face of decades of Commission precedent. Denying rehearing, FERC contended that petitioners' cost allocation arguments were "based on a misconception of what fixed costs include." R.375 [July 2020 Rehearing Order II P 65], JA1581. Because fixed costs "do not vary with demand," FERC suggested, they should not be allocated based on measures of customers' use of the facilities. *Id.* But while fixed costs do not vary with use, they still must be allocated in some way roughly commensurate with the benefits that flow from them or that approximates how different customers' use patterns contributed to their incurrence. As such, FERC has long accepted rates

11

that allocate fixed costs wholly or partly based on customers' relative usage at times of system peak demand. *E.g.*, *Cities of Bethany*, *Ill. v. FERC*, 727 F.2d 1131, 1136-37 (D.C. Cir. 1984) (explaining that in wholesale electric rates "fixed costs are allocated on the basis of a customer's contribution to the system's peak demand" and discussing whether peak demand should be measured annually, seasonally, or monthly); *Consol. Gas Supply Corp. v. FPC*, 520 F.2d 1176, 1180-81 (D.C. Cir. 1975) (explaining that natural gas rates typically recover fixed costs through demand and commodity charges, with the demand component "calculated according to the maximum amount that the customer has a right to demand . . . , or on the basis of the highest daily take for each customer during the past twelve months."). Here, petitioners persuasively demonstrated that Mystic can use no more than 39% of Everett's peak vaporization capacity and, so, should pay no more than that percentage of its fixed costs. Contrary to the unsupported assertion in its rehearing order, nothing about the nature of Everett's fixed costs justified a greater allocation of Everett costs to ISO-NE customers under the Agreement.

## II.  **FERC's Elimination of the Everett Revenue Credit Is Unreasonable.**

In its December 2018 Order, FERC found Commission Trial Staff's revenue crediting proposal to be reasonable, and directed Mystic to "modify the Agreement consistent with Trial Staff's proposal and to include a provision for maintaining a

record of third-party sales for the purposes of verifying how revenues are credited."

R.313 [December 2018 Order P 134 & n.303], JA1323-24. As FERC explained:

> As a general rule, the equitable treatment of costs *vis-à-vis* revenue credits is as follows:  if certain costs are included (or excluded) in the revenue requirement, then revenue credits associated with those costs should be included (or excluded) as well (and *vice versa*).  If costs are included but related revenue credits are excluded, then the resulting rate results in double-recovery. . . .

*Id.* In its July 2020 Rehearing Order II, FERC turned about face and concluded that the FPA, gave it jurisdiction to allocate nearly all Everett costs to Mystic, but deprived it of jurisdiction to require the crediting to Mystic of margins on Everett's third-party sales. R.375 [July 2020 Rehearing Order II P 66], JA1581.  On that basis, FERC summarily concluded that the revenue crediting mechanism it had directed in the December 2018 Order "which focuses directly on Everett's conduct rather than Mystic's, may exceed the scope of the Commission's authority." *Id*.  On this basis, FERC "set aside the December 2018 Order in part . . . no longer requir[ing] that the Mystic Agreement include the sliding scale mechanism or any other revenue crediting mechanism." *Id*. But, as FERC had observed in the December 2018 Order, "[i]f costs are included but related revenue credits are excluded, then the resulting rate results in double-recovery."  R.313 [December 2018 Order P 134, n.303], JA1323-24. The Commission's elimination of the revenue crediting requirement thus ensured that rates charged under the Agreement would be unjust and unreasonable because they would result in double recovery of Everett's fixed

13

costs—once from ISO-NE customers under the Agreement, and a second time from Everett customers that include those served by its local distribution company and interstate pipeline connections.

FERC's elimination of the revenue credit is paradigmatic unreasoned decision making. *Allentown Mack Sale & Servs., Inc. v. NLRB*, 522 U.S. 359, 375 (1998) ("Reasoned decisionmaking, in which the rule announced is the rule applied, promotes sound results, and unreasoned decisionmaking the opposite. The evil of a decision that applies a standard other than the one it enunciates spreads in both directions, preventing both consistent application of the law by subordinate agency personnel (notably [administrative law judges']), and effective review of the law by the courts").  Commissioner Glick's dissent in the July 2020 Rehearing Order I summarizes the situation aptly:

> Today's orders are an unfortunate double whammy for ratepayers, who will now be responsible for paying all of Everett's fixed costs, while receiving no credit for sales Everett is able to make to third parties using the facilities they have paid for.  This is certainly not a just and reasonable result.

R.374 [July 2020 Rehearing Order I, Comm'r, Glick, dissenting P 8, n.21], JA1543-44.

## III.    FERC's Refusal to Apply a "Clawback" to Everett Is Unreasonable.

Where a generation resource seeks to exit the competitive market and retire but is retained through a cost-of-service agreement like the Agreement at issue in this proceeding, FERC typically requires the inclusion of a "clawback" provision

that requires the generator to reimburse customers for capital costs and the costs of repairs paid under the cost-of-service agreement. *See,* Op. No. 556, PP 51-60; *N.Y. Ind. Sys. Operator, Inc.*, 155 FERC ¶ 61,076, PP 122-128 (2016), *on reh'g*, 161 FERC ¶ 61,189, PP 82-89 (2017), *on reh'g*, 163 FERC ¶ 61,047 (2018). The clawback provision has a twofold rationale: (1) it deters the generating resource from "toggling" between the higher of cost-based and market-based compensation, and (2) it prevents the unfair consumer subsidization of the generating resource to the disadvantage of its competitors. 155 FERC ¶ 61,076, PP 123-24.

FERC's December 2018 Order did not expressly require that Exelon provide a clawback provision relating to Everett. One of State Petitioners, New England States Committee on Electricity (States Committee)—sought clarification that the FERC had intended to impose such a requirement, while others understood the order that way without need for clarification. In its July 2020 order on rehearing, FERC stated that it would not require the inclusion of a clawback provision related to Everett capital expenditures funded by ISO-NE customers during the term of the Mystic Agreement. R.375 [July 2020 Rehearing Order II P 43], JA1570. FERC offered this rationale for its refusal (*id.*):

> The clawback mechanism for Everett's capital costs suggested by [the States Committee] would not apply to payments that Mystic received under a jurisdictional rate, but rather would apply to payments that Everett received under the non-jurisdictional Everett Agreement. As noted above, even though Mystic included the Everett Agreement as an attachment to the

> Mystic Agreement transmittal, the Everett Agreement is not on file with the Commission and is not a jurisdictional rate because Everett is not a jurisdictional entity. Thus, we find that the Commission lacks jurisdiction to require a clawback, true-up, and/or refund of Everett's costs. Additionally, if Mystic 8 and 9 retire but Everett does not, the Mystic Agreement would be terminated; therefore, there would be no rate within the jurisdiction of the Commission through which to order a refund.

FERC denied rehearing in its December 2020 Order, offering minimal additional explanation. R.420 [December 2020 Order P39], JA1935-36.

FERC's failure to require a clawback mechanism for recovering ratepayer-funded expenditures on Everett during the term of the Agreement is fundamentally inconsistent with the recognized requirements of the FPA, and inevitably renders the Agreement unjust, unreasonable, and unduly discriminatory. Under FERC's settled policies, its failure to require a clawback (or other foreseeably effective measure to ensure against toggling and the unfair conscription of captive customers into the role of investors in a merchant enterprise) adds a third "whammy" to the 91% allocation of Everett costs to ISO-NE customers, and failure to provide for crediting of revenues from Everett's vapor sales to third parties. FERC itself has recognized the inequity of allowing cost-of-service compensation paid by customers without the protection of a clawback mechanism (or its equivalent), but failed to provide that protection here. Op. No. 556, PP 51-60 (applying clawback provision to both capital expenditures and expensed repairs during term of [cost-of-service] agreement); *N.Y. Ind. Sys. Operator, Inc.*, 155 FERC ¶ 61,076, PP 122-128 (2016) (requiring that "that

where a . . . generator [retained for reliability reasons] wishes to continue to operate at the end of its [cost-of-service] agreement, it must repay NYISO the higher of: (1) the capital expenditures less depreciation, that NYISO reimbursed the [retained] generator to enable it to remain in service during the term of the [cost-of-service] agreement; or (2) the above-market payments the [retained] generator received during the term of the [cost-of-service] agreement" in order to prevent toggling between higher of cost or market revenues), *on reh'g*, 161 FERC ¶ 61,189 (2017), *on reh'g*, 163 FERC ¶ 61,047 (2018).

FERC's failure to explain adequately the decision to jettison a standard consumer protection measure fails to fulfill the requirements of reasoned decision making. *PSEG Energy Res. & Trade LLC v. FERC*, 665 F.3d 203, 208 (D.C. Cir. 2011) ("[a]n agency's 'failure to respond meaningfully' to objections raised by a party renders its decision arbitrary and capricious" (quoting *Canadian Ass'n of Petroleum Producers v. FERC*, 254 F.3d 289, 299 (D.C. Cir. 2001)); *PPL Wallingford Energy LLC v. FERC*, 419 F.3d 1194, 1198 (D.C. Cir. 2005) (same).

## CONCLUSION

For the foregoing reasons, the Court should grant the State Petitioners' petitions for review, vacate those portions of the Orders challenged by State Petitioners.

Respectfully submitted,

/s/ Scott H. Strauss                          /s/ John P. Coyle

Scott H. Strauss                           John P. Coyle (Cir. Bar No. 32182)
Jeffrey A. Schwarz                         DUNCAN & ALLEN LLP
Amber L. Martin Stone                      1730 Rhode Island Avenue, Suite 700
SPIEGEL & MCDIARMID LLP                     Washington, DC  20036
1875 Eye Street, NW                        (202) 289-8400
Suite 700                                  jpc@duncanallen.com
Washington, D.C.  20006
Telephone:  (202) 879-4000                 *Counsel for Eastern New England*
                                           *Consumer-Owned Systems*

*Counsel for Massachusetts*
*Municipal Wholesale Electric*
*Company and New Hampshire*
*Electric Cooperative, Inc.*


Dated: February 24, 2022

18

# CERTIFICATE OF COMPLIANCE

As required by Fed. R. App. P. 29(a)(4)(G), Fed. R. App. P. 29(a)(5), and the Court's June 23, 2021 order establishing briefing formats and schedule, I certify that this Brief of Intervenors Braintree Electric Light Department, et al., Massachusetts Municipal Wholesale Electric Company, and New Hampshire Electric Cooperative, Inc. in Support of State Petitioners complies with the type-volume limitations because its textual portions, including headings, footnotes, and quotations, contain 4,075 words, as counted by the "Word Count" feature of Microsoft Word 2016, the program with which this brief was prepared. This word count excludes: (1) the cover page; (2) the table of contents; (3) the Rule 26.1 corporate disclosure statement; (4) certificates; (5) the glossary; and (6) the signature block.

Respectfully submitted,

*/s/ John P. Coyle*
John P. Coyle
DUNCAN & ALLEN LLP
1730 Rhode Island Avenue, NW
Suite 700
Washington, D.C.  20036
(202) 289-8400
jpc@duncanallen.com

*Attorney for the New England
Consumer-Owned Systems*

Dated: February 24, 2022.

## CERTIFICATE OF SERVICE

I hereby certify that I have this 24th day of February 2022 cause the foregoing to be served electronically on counsel of record for each Petition and Intervenor in this proceeding through the Court's CM/ECF system.

*/s/ John P. Coyle*

John P. Coyle (Cir. Bar No. 32182)
DUNCAN & ALLEN LLP
1730 Rhode Island Avenue, NW
Suite 700
Washington, D.C.  20036
(202) 289-8400

Washington, D.C.
February 24, 2022